# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 20, 2021

Lyle W. Cayce
Clerk

No. 19-30039

Brian Roberts,

*Plaintiff—Appellee*,

*versus*

Shannon Lessard, Major; Lindell Slater, Lieutenant;
Kevin Durbin, Major,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-7

Before Davis, Stewart, and Oldham, *Circuit Judges*.

Per Curiam:*

Defendants Major Lessard, Lieutenant Slater, and Major Durbin, prison guards at Elayn Hunt Correctional Center, appeal the district court's denial of their motion for summary judgment asserting qualified immunity. The district court determined that Plaintiff Brian Roberts presented

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

sufficient evidence to overcome Defendants' qualified immunity defense and denied the motion. Because Plaintiff failed to demonstrate a genuine issue of material fact regarding deliberate indifference, we REVERSE and REN-DER judgment for Defendants.

## I. Background

Roberts is an inmate at Elayn Hunt Correctional Center in Iberville, Louisiana. On December 26, 2015, Lieutenant Johnson activated her beeper after noticing that Roberts had collapsed on the floor of his cell. Roberts's symptoms included loss of control of his body and inability to speak. An EMT responded to the alert, as well as Defendant Major Lessard. Roberts alleged that Lessard and the EMT discussed that Roberts may be intoxicated on "mojo" (synthetic marijuana).

Roughly 12 minutes later, another inmate and at least one of the defendants wheeled Roberts to the prison's medical facility, the Assessment Triage Unit ("ATU"). At the ATU, no physician was on duty, but prison medical records indicate that a second EMT evaluated Roberts. Additionally, Roberts alleged that he was administered a drug test at the ATU by prison guard Defendants Major Lessard, Major Durbin, and Lt. Slater. Roberts further alleged that the drug test was negative, and no mojo was found. The EMTs and the Defendants, nevertheless, continued to believe that Roberts was intoxicated. Defendants issued Roberts a disciplinary write-up and transferred him to administrative segregation as punishment.

In the early morning hours of the next day, December 27, 2015, Roberts was found on the cell floor half-unconscious and unable to move. At this point, Defendants believed that Roberts may have had a stroke. Roberts was brought to the ATU again, a doctor was called, and Roberts was transferred to Our Lady of the Lake Hospital. Doctors at the hospital found that Roberts had suffered a stroke which left him paralyzed on the left side of his body.

No. 19-30039

Roberts filed suit under 42 U.S.C. § 1983 and state law against Lessard, Durbin, and Slater alleging that they violated his Eighth Amendment rights by refusing medical treatment or providing inadequate treatment. Defendants filed a motion for summary judgment asserting the defense of qualified immunity. The district court found that Roberts presented evidence to overcome the qualified immunity defense and denied the motion for summary judgment. This appeal followed.

## II. DISCUSSION

### A.    Standard of Review

We generally review a district court's summary judgment de novo.[1] However, when reviewing an appeal of a denial of summary judgment on qualified immunity grounds, we "[do] not conduct a typical *de novo* review."[2] Instead, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment."[3] "Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiff['s] version of the facts as true."[4] Nevertheless, the district court's conclusions regarding the materiality of the facts are reviewed de novo.[5]

---

[1] *Hyatt v. Thomas*, 843 F.3d 172, 176 (5th Cir. 2016).

[2] *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014) (quotation omitted).

[3] *Id.*

[4] *Id.* (quotation omitted).

[5] *Id.*

No. 19-30039

"Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right."[6] After an official asserts qualified immunity, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."[7] When reviewing a motion for summary judgment based on qualified immunity, "[w]e must decide (1) whether an officer's conduct violated a federal right and (2) whether this right was clearly established."[8]

## B.    Deliberate Indifference

The Supreme Court has established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" proscribed by the Eighth Amendment and is actionable under § 1983.[9] Generally, "the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[10] Deliberate indifference requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[11] Nevertheless, "prison officials who actually knew of a

---

[6] *Hyatt*, 843 F.3d at 177 (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)).

[7] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[8] *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).

[9] *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)).

[10] *Id.*

[11] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."[12]

### 1. Defendants' Subjective Awareness of Risk of Harm

Defendants concede that a stroke constitutes a substantial risk of harm to an inmate. Furthermore, because Defendants were aware of Roberts's stroke symptoms, Roberts argues Defendants should have drawn an inference of substantial risk of harm. Lessard testified in her deposition that in her first encounter with Roberts, she observed him sweating, slurring his speech, and having trouble controlling his movement. It is disputed whether Durbin was present with Lessard during the first encounter with Roberts, but assuming that he was, Durbin would have witnessed the same symptoms. Slater became involved in the incident when Roberts was wheeled to the ATU. She, too, would have witnessed the same symptoms as the other Defendants. When Lessard first arrived at Roberts's cell, she asked him if he had ever had seizures which he denied. She then began thinking he was intoxicated. The EMT arrived around that time and also thought he was intoxicated.

Though Defendants were aware that Roberts's symptoms could indicate a serious medical problem which posed a substantial risk of harm, to be considered deliberately indifferent they must also draw the inference that those facts did indeed relate to a substantial risk of harm. Defendants argue that Roberts's symptoms also suggested that he was intoxicated, and the earliest they were aware that Roberts suffered a stroke was the following morning during their second encounter with him. In any event, it is uncontested that Defendants believed that Roberts was intoxicated and this

---

[12] *Id.* at 844.

explained his symptoms. We are not persuaded that a jury could conclude that the Defendants actually drew the inference that Roberts was suffering from a medical condition that presented a serious risk of harm. This is particularly so given that both EMTs concluded that Roberts was intoxicated.

### 2. Defendants' Response to Risk of Harm

To act with deliberate indifference, prison officials must also disregard a substantial risk of harm "by failing to take reasonable measures to abate it."[13] Defendants have produced depositions and documents showing that upon discovery that Roberts had collapsed in his cell, the defendant prison guards and an EMT responded, Roberts was taken to the ATU where he was evaluated by a second EMT, and the total response time was about 12 minutes. Roberts contends that the response time "seem[ed] like forever,"[14] but otherwise alleges a similar chain of events. The record evidence shows a reasonably timed response that included prompt consultation with medical personnel. We conclude that based on the summary judgment evidence, there is no genuine issue of material fact indicating that Lessard, Durbin, and Slater responded unreasonably to Roberts's medical needs.

Roberts also provided evidence that Defendants insisted that he was intoxicated from synthetic marijuana. He asserts that this insistence influenced the medical personnel and caused his delayed stroke treatment. Nevertheless, Roberts failed to establish a genuine issue that Defendants acted unreasonably for purposes of deliberate indifference. First, our prior

---

[13] *Hyatt v. Thomas*, 843 F.3d 172, 179 (5th Cir. 2016) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).

[14] The response time is not seriously disputed. The time it took to get to the ATU is documented in the medical record along with all the tests administered by medical personnel.

No. 19-30039

decisions suggest that an officer's failure to correctly diagnose a medical condition from ambiguous symptoms does not amount to deliberate indifference.[15]

Second, the defendants in this case are the prison guards rather than the medical personnel. Although the prison guards concluded wrongly that Roberts was intoxicated, they still responded by turning him over to medical personnel. The summary judgment evidence does not show that the prison guards "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" as required for deliberate indifference.[16] Once Roberts was turned over to medical personnel, the prison guards' responsibility was then to defer to the findings of the medical personnel. Here, the medical personnel also concluded that Roberts was intoxicated after evaluating him. Once medical personnel gave an intoxication diagnosis, Defendants' obligation was to act in accordance with that finding and refrain from "interfering with the treatment once prescribed."[17] Notably, we are not presented with a case against the prison medical personnel and whether their actions constituted deliberate indifference.

We therefore hold that Roberts has failed to come forward with evidence demonstrating a genuine issue that Defendants acted with

---

[15] *See Trevino v. Hinz*, 751 F. App'x 551, 555 (5th Cir. 2018) (citing *Tamez v. Manthey*, 589 F.3d 764 (5th Cir. 2009)); *Hines v. Henson*, 293 F. App'x 261, 263 (5th Cir. 2008). Although unpublished opinions issued after January 1, 1996 are not controlling precedent, they may be considered persuasive authority. *Ballard v. Burton,* 444 F.3d 391, 401 & n.7 (5th Cir. 2006).

[16] *Domino v. Tex. Dep't. of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

[17] *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

deliberate indifference. Without deliberate indifference, Roberts has failed to establish an Eighth Amendment violation. Thus, Defendants are protected by qualified immunity.

## III. CONCLUSION

The judgment of the district court denying summary judgment for Defendants' defense of qualified immunity is REVERSED, and judgment is RENDERED for Defendants.